USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/14/25__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CDBD HOLDINGS, INC.,

        Plaintiff,

-against-

ELIZABETH SLAVUTSKY, et al.,

        Defendants.

23-CV-71 (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff CDBD Holdings, Inc. (CDBD) seeks to recover money loaned by D&D Funding II, LLC (D&D or the Original Lender) to defendant Elizabeth Slavutsky (Slavutsky) and eight restaurant businesses – Yes Food LLC d/b/a Blue Dog Café, Angelic Foods Inc. d/b/a Blue Dog Kitchen Bar, Blue Dog Café at Le Parker Meridien Inc., Healthy Haven Inc. d/b/a Blue Dog Commissary, Lavender Kale LLC, Pear Squared LLC, Violet Pear Squared LLC, and Purple Coconut LLC) (collectively, the Restaurant Defendants) – owned and operated by Slavutsky and/or her mother, defendant Yanna Slavutsky (Yanna or the Guarantor). Plaintiff CDBD is the assignee of D&D with respect to D&D's rights and interests under a Promissory Note and Security Agreement (the Note Agreement) executed by Slavutsky and the Restaurant Defendants (collectively, the Borrowers) on November 7, 2017. The Borrowers' obligations were further secured by a pledge agreement signed by both Slavutsky and Yanna.

On January 5, 2023, after the Borrowers defaulted on their contractual obligations, plaintiff CDBD initiated this action to recover, *inter alia*, the sums due and owing under the Note Agreement. On February 27, 2024, after more than a year of vigorous litigation, defendants' counsel requested leave to withdraw, which was granted on March 12, 2024. Since then, defendants have failed to appear or otherwise defend the case. Accordingly, on June 7 and 10, 2024, the Clerk of Court issued Certificates of Default as to all defendants.

Now before me is plaintiff's unopposed motion, filed on August 23, 2024, for entry of a default judgment against all defendants except Yanna. (Dkt. 116.) For the reasons that follow, the motion will be granted, and judgment will be entered in the amount of $10,506,052.43, plus post-judgment interest at the federal rate.

## I.     BACKGROUND

### A.     The Note Agreement

The well-pleaded factual allegations set forth in plaintiff's Amended Complaint, which this Court must accept as true after default,[1] establish that on November 7, 2017, the Original Lender and the Borrowers entered into the Note Agreement, which consolidated approximately 80 individual Advances (loans), in the aggregate principal amount of $5,859,500.00, made by the Original Lender to the Borrowers from 2013 through 2017. *See* Amend. Compl. (Dkt. 41) ¶ 16; Note Ag. (Dkt. 41-1) § 2.1.1. Slavutsky signed the Note Agreement on her own behalf and as agent for and President or Vice President of each of the corporate Borrowers. Note Ag. § 18; *id*. at ECF pp. 55-56 (signature pages).

Under the Note Agreement, all Advances "shall bear interest at seven percent (7%) per annum . . . from the date such Advance was made . . . until paid in full in cash." Note Ag. § 4.1. However, upon an Event of Default, the interest rate rises to 10%, *id*., and the debt is accelerated. *Id*. § 15.1. Events of Default include failure to pay principal or interest on any Advance when due, *id*. § 14.1; loss of collateral, *id*. § 14.5; and filing for bankruptcy protection. *Id*. § 14.10(d). The Borrowers agreed to be jointly, severally, and unconditionally liable "with respect to the payment

---

[1] *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

and performance of all of the Obligations," *id.* § 2.3, that is, "any and all obligations, . . . liabilities, and indebtedness" of the Borrowers under the Note Agreement. *Id*. § 1.1.

As part of the Note Agreement, each Borrower pledged a broad array of collateral to secure repayment of their debt, including – as relevant here – any commercial tort claims against third parties. Amend. Compl. ¶¶ 17-18; Note Ag. § 5.1(a). Additionally, Yanna executed a Limited Guaranty, *see* Amend. Compl. ¶ 19; Guaranty (Dkt. 41-2) § 2, and both Slavutsky and Yanna executed a Pledge Agreement, "pursuant to which [they] each unconditionally pledged their respective ownership interests in the Borrowers and related businesses as collateral." Amend. Compl. ¶ 20; *see also* Pledge Ag. (Dkt. 41-3) Sched. I (listing pledged ownership interests).[2]

Schedule 2 to the Note Agreement listed the past Advances received by Borrowers through November 7, 2017, aggregating $5,859,500.00. Note Ag. Sched. 2 (ECF p. 69). Section 3 of the Note Agreement permitted the Borrowers to request additional "Incremental Advances," which, if extended, would become "part of the Obligations secured by the Collateral and any guarantees," and be subject to the same interest rates as the existing Advances. *Id.* § 3.

---

[2] In the Pledge Agreement, Slavutsky pledged her ownership interest in a nonparty restaurant business known as Blue Dog at 399, Inc. (Blue Dog 399). *See* Pledge Ag. Sched. I. At that time, Blue Dog 399 was in bankruptcy proceedings in the Southern District of New York (SDNY), where it was pursuing a claim, brought as an adversary proceeding, against its former landlord, BP 399 Park Avenue LLC. The Note Agreement specifically gave D&D a security interest in the Blue Dog 399 litigation. *See* Note Ag. § 5.1(a)(h) & Ex. A. It also gave D&D a security interest in any claim "arising out of the engagement of Seyfarth Shaw, LLP [Seyfarth Shaw], as counsel to Elizabeth Slavutsky and/or Blue Dog 399" in connection with the dispute between Blue Dog 399 and its landlord. *Id*. As discussed in Part I(B), *infra*, Blue Dog 399 later brought an adversary proceeding against Seyfarth Shaw as part of its SDNY bankruptcy proceeding. Additionally, Slavutsky brought an action against Seyfarth Shaw in a Florida state court.

### B.     The Forbearance Agreement, Notice of Default, and Demand Notice

On October 8, 2018, the Original Lender, the Borrowers, and the Guarantor entered into a Forbearance Agreement in which the Borrowers (referred to therein as the Loan Parties) acknowledged that they were in default under the Note Agreement; that the debt had been accelerated; and that default interest had been accruing since November 16, 2017. Amend. Compl. ¶ 27; Forbearance Ag. (Dkt. 41-5) §§ 2.1, 2.2(a). Notwithstanding the default, the Original Lender agreed to abstain from exercising its default remedies under the Note Agreement, the Pledge Agreement, and the Guaranty (collectively, the Note Documents) until the "Forbearance Termination Date." Forbearance Ag. § 2.2(a). In return, the Borrowers and the Guarantor reaffirmed their obligations under the Note Documents, waived all defenses with respect to their enforcement, and acknowledged that they relied on the advice of "counsel of their own selection," not on any representation by Original Lender, in executing the Forbearance Agreement. *Id.* §§ 6-7, 8.5. Additionally, Slavutsky conveyed "all of [her] right, title and interest" in Blue Dog 399 to the Original Lender under a separate Stock Purchase Agreement (SPA). *Id*. at ECF p. 2.

> The Forbearance Termination Date was defined as:
>
> (i) the date on which any Loan Party repudiates or asserts, or threatens to repudiate or assert, any defense to any obligation or liability under the Blue Dog 399 Bankruptcy, the Note Agreement, any of the other Note Documents, the SPA or this Agreement; (ii) the date on which any Loan Party breaches any of the terms and provisions hereof or under the SPA, or any representation or warranty hereunder or thereunder prove to be false or inaccurate; (iii) the date of filing of a petition under any bankruptcy laws against any Loan Party; (iv) the taking of any enforcement action or exercise of any rights or other remedies of any other creditor against any Loan Party; (v) an Event of Default under any of Sections 14.6 – 14.11 of the Note Agreement; (vi) the settlement, judgement, resolution or dismissal of the [Blue Dog] Litigation and the Seyfarth Claim; and (vii) the dismissal or conversion to a chapter 7 or similar proceeding of the Blue Dog 399 Bankruptcy not initiated or consented to by Lender while it is the owner of the Shares.

Forbearance Ag. § 1.

On August 23, 2021, the Original Lender sent a Notice of Default to Slavutsky's counsel (with a copy to Slavutsky) informing her that the Forbearance Termination Date had been reached due to (1) "the commencement of the proceeding captioned *Elizabeth Slavutsky v. Seyfarth Shaw, LLP, et al.,* in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, at Case. No. 2021-004558-CA-01, in violation of that certain Stock Purchase Agreement dated as of October 8, 2018" and (2) "her filing a chapter 13 [bankruptcy] case and intentionally and wrongfully omitting the claims outstanding against her by D&D." Amend. Compl. ¶ 29; *see also* Notice of Default (Dkt. 41-6) at 1-2. On August 8, 2022, after Blue Dog 399 settled its claims against Seyfarth Shaw, its SDNY adversary proceeding was dismissed, again triggering the Forbearance Termination Date. *Id.* ¶¶ 30-31.

On September 19, 2022, D&D sent a Demand for Immediate Payment and/or Turnover of Collateral (the Demand Notice) to Slavutsky and the Guarantor, stating that although "[t]he Forbearance Termination Date . . . occurred upon Elizabeth Slavutsky's various defaults described in the Notice of Default issued by [Original] Lender on August 23, 2021 . . . there can be absolutely no dispute that the Forbearance Termination Date has occurred as a result of the recent settlement, resolution, and [dismissal of] the claim made by Blue Dog at 399, Inc., against Seyfarth Shaw, LLP," in the SDNY adversary proceeding. Amend. Compl. ¶ 32; Demand Not. (Dkt. 41-7) at 3. The Original Lender calculated the total Note Obligation as $9,038,484.43, including an unpaid principal balance of $5,905,869.00; note interest of $288,569.37, accumulated through November 16, 2017; and default interest of $2,844,046.06, accumulated thereafter through September 19, 2022. Demand Not. at 3. Should defendants be unable to pay, the Original Lender demanded that they immediately assemble and turn over "all of the Collateral under the Loan Documents." Amend. Compl. ¶ 34; Demand Not. at 5. The Demand Notice gave defendants until September 29,

5

2022 to pay their debt or turn over the collateral, but defendants "failed or refused to comply with the Demand Notice, by failing or refusing to pay any of the Note Obligation and failing or refusing to assemble any of the Collateral or make such Collateral available as required by the Loan Documents." Amend. Compl. ¶ 37.

On November 21, 2022, D&D assigned its rights under the Note Documents, Forbearance Agreement, and "all other agreements . . . that evidence or secure the obligations under the Note Agreement" to plaintiff CDBD. Amend. Compl. ¶ 36; *see also* Assignment (Dkt. 41-8) § 1.[3]

### C.    This Action

CDBD commenced this action on January 5, 2023, and filed its Amended Complaint on March 8, 2023, asserting claims for (1) Breach of Contract; (2) Replevin; (3) "Temporary and Permanent Injunctions"; and (4) Declaratory Judgment. Amend. Compl. ¶¶ 67-72. For purposes of its contract claim, plaintiff calculated the total Note Obligation as of December 15, 2022 at $9,179,254.46, including an unpaid principal balance of $5,905,869.00; note interest of $288,569.37, accumulated through November 16, 2017; and default interest of $2,984,816.09, accumulated thereafter through December 15, 2022. *Id.* ¶ 41.[4] Plaintiff also asks the Court to add

---

[3] Christopher Diamantis signed the Assignment on behalf of both D&D (as Manager) and CDBD (as President). *See* Assignment at 2.

[4] Because the calculations in the Amended Complaint are "updated" to December 15, 2022, Amend. Compl. ¶¶ 41, 43, the default interest figure ($2,984,816.09) is higher than it was in the Demand Notice ($2,844,046.06). The Court notes, however, that plaintiff's table, *see id.* ¶ 41, incorrectly lists the calculation date as "9/19/2022" instead of "12/15/2022."

additional interest, at $1,618.05 per diem, after December 15, 2022, and "costs and expenses," including attorneys' fees. *Id*.

On June 23, 2023, the parties consented to my jurisdiction for all purposes. (Dkt. 59.) On July 12, 2023, defendants answered the Amended Complaint (Dkt. 62 at ECF pp. 1-16) and Slavutsky asserted a third-party claim against Diamantis and D&D, alleging that Diamantis breached fiduciary duties that he owed to her as her "confidant, boyfriend, lover, and business advisor," and that D&D was his alter ego. (Dkt. 62 at ECF pp. 16-19.) On July 26, 2023, Diamantis moved to dismiss the third-party claim. (Dkt. 63.)

On February 27, 2024, defendants' attorney John Lehr moved for leave to withdraw, citing fundamental disagreements concerning case strategy. (Dkt. 94.)[5] The motion was served on all defendants, as was this Court's order explaining how they could oppose the motion, should they wish to do so (Dkts. 95-97), but no opposition was filed. On March 12, 2024, the Court dismissed Slavutsky's third-party claim (Dkt. 99) and, separately, issued an Order Regarding Attorney Withdrawal (Withdrawal Order) (Dkt. 100), which granted attorney Lehr's motion and explained:

> An individual defendant may represent herself in litigation, *pro se*, but corporations and limited liability companies "may appear in federal court only through a licensed attorney." *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007). Accordingly, this action is hereby STAYED as against all defendants for 30 days to permit them to retain new counsel. No later than **April 11, 2024**, defendants' new counsel must file a notice of appearance on the docket. If the individual defendants choose to represent themselves, they shall, by the same date, file a Notice of Pro Se Appearance providing their contact information. The Notice of Pro Se Appearance is available on the Court's website at https://nysd.uscourts.gov/node/826.
>
> **If by April 11, 2024, the corporate defendants have failed to appear through new counsel or the individual defendants have failed to appear through new counsel or *pro se*, plaintiff may commence default proceedings against them**.

---

[5] Among other things, counsel noted, Slavutsky twice filed for bankruptcy protection (once in 2023 and once in 2024) without telling her attorney. (*See* Dkt. 94-1 ¶ 5.)

Withdrawal Order at 1 (emphasis in original).

The Withdrawal Order was served on all defendants (*see* Dkts. 101-02), but none of them appeared, either through counsel or pro se, or took any other steps to defend this action. On June 7 and June 10, 2024, plaintiff requested, and the Clerk of Court issued, Certificates of Default as to all defendants (Dkts. 108-13.)

### D. Plaintiff's Motion for Default Judgment

On August 23, 2024, plaintiff filed its motion for a default judgment on its breach of contract claim against Slavutsky and the Restaurant Defendants, supported by a memorandum of law (Pl. Mem.) (Dkt. 118) and the affidavit of Christopher Diamantis (Diamantis Aff.) (Dkt. 118-1).[6] Plaintiff calculated the amount due on the Note Agreement as of August 24, 2024, as follows:

| | |
|---|---:|
| Unpaid Principal Balance | $5,905,869.00 |
| Note interest from 12/15/13 through 11/16/17 at 7% | $288,569.37 |
| Default interest from 11/17/17 to 8/31/24 at 10% | $3,996,095.03 |
| Total | **$10,190,533.40** |

Diamantis Aff. ¶ 7. Plaintiff does not seek any costs or attorneys' fees, but "reserves the right to seek any judgment execution costs and fees incurred by Plaintiff in any proceedings that may occur in enforcement of the requested default judgment, as may be appropriate." *Id*. ¶ 6. Plaintiff's motion papers were served on all defendants by mail and email the same day they were filed. (Dkt. 119.)

On December 13, 2024, at the Court's request (*see* Dkt. 122), plaintiff submitted a supplementary affidavit (Supp. Diamantis Aff.) (Dkt. 123), with attached spreadsheets. In response

---

[6] Plaintiff does not seek a default judgment with respect to its other claims. Nor does it seek a judgment against the Guarantor. *See* Pl. Mem. at 5 n.3.

to the Court's request to explain the discrepancy between the "aggregate principal amount" of $5,859,500.00 listed in the Note Agreement, *see* Note Ag. ¶ 11, and the "unpaid principal balance" of $5,905,869.00 sought in this action, *see* Amend. Compl. ¶ 10, Diamantis attests that while the aggregate principal amount was calculated to be $5,859,500.00 when the Note Agreement was executed, the Borrowers borrowed another $430,210.00 in 2018. Supp. Diamantis Aff. ¶ 6(b). In addition, prior to filing this action, "the subject account was audited internally, and it was determined that Borrowers were due a <u>net credit</u> of $383,841.00, and appropriate adjustments were made to the account." *Id*. ¶ 6(c) (emphasis in original). In response to the Court's request for an updated interest calculation, with detail, Diamantis calculated the amount due on the Note Agreement as of December 31, 2024, as follows:

| | |
|---|---|
| Unpaid Principal Balance | $5,905,869.00 |
| Note interest from 12/15/13 through 11/16/17 at 7% | $288,569.37 |
| Default interest from 11/16/17 to 12/31/24 at 10% | $4,193,496.68 |
| **Total** | **$10,387,935.05** |

*Id*. ¶ 9. The spreadsheets attached to the supplemental affidavit set forth a summary of the principal loan and interest calculations, *id*. Ex. A; a detailed calculation of Advancements made and interest accrued (at 7%) through November 16, 2017, *id*. Ex. B; and a detailed calculation of Advancements made and interest accrued (at 10%) on and after November 17, 2017. *Id*. Ex. C.[7]

The supplemental affidavit, with attachments, was served on the defaulted defendants the same day it was filed. (Dkt. 124.) However, no defendant has opposed or otherwise responded to the default motion.

---

[7] Although the supplemental affidavit indicates that the default interest rate of 10% was applied beginning on November 16, 2017, *see* Supp. Diamantis Aff. ¶ 9, the underlying spreadsheets make it clear that the default rate was not applied until the next day, November 17, 2017. *Id*. Exs. B, C.

## II.     DISCUSSION

### A.     Jurisdiction and Venue

I am satisfied that this Court has subject-matter jurisdiction over CDBD's claims. Subject-matter jurisdiction is properly based on 28 U.S.C. § 1332 (diversity jurisdiction), as the amount in controversy exceeds $75,000 and plaintiff and defendants are citizens of different states. Plaintiff CDBD is a Tennessee corporation with its principal place of business in Nashville, Tennessee. Amend. Compl. ¶ 3. Defendant Elizabeth Slavutsky is a citizen of either New York or Florida. *Id.* ¶ 4 ("Elizabeth Slavutsky is a citizen of the State of New York . . . although she has, from time to time, alleged citizenship in the State of Florida."); *see also* Amend. Ans. ¶ 103 ("Elizabeth Slavutsky is a resident and citizen of the State of Florida."). Defendant Yanna Slavutsky is a citizen of New York. Amend. Compl. ¶ 13. The Restaurant Defendants are either New York corporations or New York limited liability companies whose sole member is either Elizabeth Slavutsky or Yanna Slavutksy. *Id*. ¶¶ 5-12. There is thus complete diversity among the parties, as required by § 1332(a)(1).

I am also satisfied as to personal jurisdiction over the defaulted defendants, all of whom appear to have been domiciled in New York when this action was filed. Any non-domiciliaries are nonetheless subject to specific personal jurisdiction in this Court, pursuant to N.Y.C.P.L.R. § 302(a)(1), because the claims against them arise out of their transaction of business in New York. Moreover, they all consented to the jurisdiction of this Court by executing the Note Agreement, which contains a mandatory New York forum-selection clause,[8] and they all appeared and litigated

---

[8] *See* Note Ag. ¶ 16.11 (requiring the parties to bring any action arising out of or related to the Note Agreement in New York City and continuing: "EACH PARTY HERETO CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL STATE, OR FEDERAL COURTS LOCATED WITHIN SAID CITY AND STATE.").

in this forum for more than a year before defaulting. *See Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327 n.5 (S.D.N.Y. 2017) ("When defendants engage in substantial pretrial activity over a lengthy period of time and forego opportunities to litigate the question of personal jurisdiction, they forfeit any personal jurisdiction defense they may have had.").

### B.    Legal Standards

Fed. R. Civ. P. 55 "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). The first step, ordinarily performed by a clerk, *see* Fed. R. Civ. P. 55(a), "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id*. The second step, which in most cases requires a motion made to and granted by the presiding judge, *see* Fed. R. Civ. P. 55(b)(2), "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled[.]" *Id*.

"[A] default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co.*, 373 F.3d at 246. Therefore, in considering a motion for the entry of judgment after default, the court must accept all well-pleaded factual allegations in the complaint as true, except those relating to damages. *Finkel*, 577 F.3d at 84. However, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). Thus, if "the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information." *Mondragon v. Keff*, 2019 WL 2551536, at *4

(S.D.N.Y. May 31, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019). When assessing the sufficiency of a complaint for liability purposes, the district court may consider documents "attached to the complaint, incorporated by reference, or integral to the complaint," *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022), including, in this case, the Note Documents attached to the Amended Complaint.

"The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel*, 577 F.3d at 83 n.6). Thus, "[e]ven in connection with a default judgment, the court has an obligation to ensure that damages are appropriate and determined with reasonable certainty." *Healing Power, Inc. v. Ace Cont'l Exports, Ltd.*, 2008 WL 4693246, at *5 (E.D.N.Y. Oct. 17, 2008). This means, among other things, that the damages sought must be recoverable under applicable law as a remedy for the defaulted claims, and the amount must be established with "reasonable certainty," *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 121 (S.D.N.Y. 2008) (quoting *Langenberg v. Sofair*, 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006)), "based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order).

### C.     Application

#### 1.     Liability for Breach of Contract

Plaintiff seeks a judgment against the Borrowers, jointly and severally, for breach of the Note Agreement. *See* Pl. Mem. at 5. To state a claim for breach of contract under New York Law, a "complaint must allege '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*,

802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

Plaintiff has adequately alleged facts supporting each element of its breach of contract claim. First, it alleges that the Original Lender entered into various contracts with the Borrowers, including the Note Agreement, which is annexed to the Amended Complaint and signed by or on behalf of each Borrower. *See* Amend. Compl. ¶¶ 16-27; Note Ag. at ECF pp. 55-59. Second, the Original Lender satisfied its obligations under the Note Agreement by paying the agreed-upon Advances (and satisfied its further obligations under the Forbearance Agreeing by refraining, for the required period of time, from taking any steps to enforce its rights under the Note Agreement). *See* Amend. Compl. ¶¶ 15, 30-32, 43; Note Ag. § 2.1.1; *id.* at ECF p. 69. Third, defendants expressly admitted their default under the Note Agreement, and agreed to additional contractual terms, in exchange for the Original Lender's promise to forbear exercising default remedies under the Note Documents until the Forbearance Termination Date, which it did. Amend. Compl. ¶ 27; *see also* Forbearance Agreement § 2.1 ("Each Loan Party hereby acknowledges the occurrence, continuance and existence of [default] as of the date hereof[.]"); *id.* § 2.2(a) ("the parties hereto acknowledge and agree that default interest has been accruing on the Obligations since November 16, 2017[.]") After termination of the Forbearance Agreement, which occurred no later than August 23, 2022, *see* Amend. Compl. ¶ 31, the Original Lender issued a Demand Notice seeking immediate repayment of the debt or surrender of the collateral by September 29, 2022. *See id.* ¶¶ 32-35; Demand Not. at ECF pp. 4-6. The Borrowers, however, failed either to repay the debt or surrender the collateral. *See* Amend. Compl. ¶ 37. Moreover, CDBD adequately alleges that it is the assignee of the Original Lender with respect to the Note Documents. *Id.* ¶ 36; Assignment.

In short, plaintiff adequately alleged that it is entitled to damages on its breach of contract claim.[9] The only remaining question is the amount of damages to which it is entitled.

### 2. Damages

Although "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, at 158 (2d Cir. 1992). Instead, a court must "ascertain the amount of damages with reasonable certainty," *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999), based upon admissible evidence. *House*, 359 F. App'x at 207. This determination may be based upon evidence presented at a hearing, but a hearing is not required, *see* Fed. R. Civ. P. 55(b)(2), where, as here, there is an adequate basis for a damages award based on "a review of detailed affidavits and documentary evidence." *Cont'l Cas. Co. v. Contest Promotions N.Y., LLC*, 2016 WL 1255726, at *6 (E.D.N.Y. March 28, 2016) (quotation omitted).

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007). Here, the Note Agreement provides for repayment of principal in the amount of $5,859,500.00 (a sum the Borrowers stipulated to when they executed that document), plus 7% interest per annum through the date of default, and 10% thereafter. Note Ag. § 4.1. Moreover, plaintiff has submitted admissible evidence, in the form of a sworn affidavit, that the principal balance rose to

---

[9] While not dispositive here, it is useful to note that defendants did not deny that they breached the contract at any point in their pleadings. Instead, they argued that recovery should be barred due to plaintiff's "unclean hands" or "breach of fiduciary duty," or due to lack of subject-matter jurisdiction. *See* Amend. Ans. ¶¶ 98-104.

$5,905,869.00 after the Note Agreement was executed (as reflected in the Demand Notice and the Amended Complaint), as a result of additional Advances in 2018 (offset by an accounting credit). Supp. Diamantis Aff. ¶ 6 & Ex. A.

In addition to repayment of the principal amount of the Advances, the Note Agreement provides for 7% annual interest (which amounts to 0.019178% daily interest). Interest accrued on each individual Advance at that rate, and on a daily basis, from the time it was made. *See* Note Ag. § 4.1. The spreadsheets attached to plaintiff's supplemental affidavit show that it has properly calculated interest in this manner, starting from the date of the first Advance on December 15, 2013. Supp. Diamantis Aff. Ex. B. Accumulated interest for the period December 15, 2013 through November 16, 2017 comes out to $288,569.37. *Id.*

After default, the debt carried interest at the default rate of 10% annually (amounting to 0.027397% daily), which plaintiff has – again – properly calculated by applying the specified interest rate on a daily basis to the aggregate balance beginning on November 17, 2017, and to each additional Advance thereafter from the time it was made. *See* Supp. Diamantis Aff. Ex. C. I note as well that the Borrowers acknowledged, when they signed the Forbearance Agreement, "that default interest has been accruing on the Obligations since November 16, 2017[.]" Forbearance Ag. § 2.2. Accumulated default interest for the period beginning November 17, 2017, and ending December 31, 2024, was $4,193,496.68. *Id.* Applying the same methodology, accumulated default interest for the period beginning November 17, 2017, and ending today is $4,311,614.06.

In sum, as of the date of this Opinion and Order, plaintiff is entitled to damages in the amount of $10,506,052.43, as follows:

| Unpaid Principal Balance | $5,905,869.00 |
|---|---|
| Note interest through 11/16/2017 at 7% (0.019178% daily) | $288,569.37 |
| Default interest from 11/17/17 to 3/14/2025 at 10% (0.027397% daily) | $4,311,614.06 |
| **Total** | **$10,506,052.43** |

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion for a default judgment against defendants Elizabeth Slavutsky, Yes Food LLC d/b/a Blue Dog Café, Angelic Foods Inc. d/b/a Blue Dog Kitchen Bar, Blue Dog Café at Le Parker Meridien Inc., Healthy Haven Inc. d/b/a Blue Dog Commissary, Lavender Kale LLC, Pear Squared LLC, Violet Pear Squared LLC, and Purple Coconut LLC, is GRANTED. Plaintiff is entitled to a judgment in the amount of $10,506,052.43, running jointly and severally against these defendants, on its breach of contract claim. Post-judgment interest will accrue at the federal rate set forth in 28 U.S.C. § 1961.

The Clerk of Court is respectfully directed to enter judgment accordingly, DISMISS any remaining claims, and close the case.

Dated: New York, New York
March 14, 2025

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**